IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN TAMBURO, on behalf of Plaintiff and the class members described below, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| HYUNDAI MOTOR AMERICA (CORPORATION), and GENESIS MOTOR AMERICA LLC, | ) ) ) ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff John Tamburo brings this action to secure redress for the failure of Defendants Hyundai Motor America (Corporation) ("HMAC") and Genesis Motor America LLC ("GMA"), which are related entities, to inform consumers that the BlueLink feature and "connected services" in their Hyundai and Genesis vehicles would be rendered obsolete and unusable upon the 3G sunset in 2022.

2. Between 2014 and 2020, Hyundai and Genesis sold cars with the BlueLink feature and "connected services," which they touted in advertising. The "connected services" included the SOS emergency button and crash reporting.

3. HMAC and GMA consistently marketed their vehicles as safe and proclaimed safety as one of HMAC and GMA's highest corporate priorities.

4. Exhibit A, attached, is an example of Defendants' safety-emphasizing marketing materials.

5. The BlueLink feature and "connected services" depended on 3G wireless technology supplied by Verizon. HMAC and GMA knew this. Consumers did not.

6. HMAC and GMA knew by 2012 that 3G services would be phased out. However,

-1-

they continued selling cars and touting the BlueLink feature and "connected services," without warning consumers of the impending termination.

7. Verizon discontinued 3G services on December 31, 2022, at which time the BlueLink feature and "connected services" ceased to function.

8. HMAC and GMA charged consumers for the "connected services," as set forth in Exhibit C, p. 3.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §1332(d). The amount in controversy, on a classwide basis, exceeds $5 million, exclusive of interest and costs. There are more than 100 class members. Plaintiff is a citizen of Illinois. Defendants are citizens of California.

10. Venue in this District is proper under 28 U.S.C. §1391 because a substantial part of the conduct giving rise to these claims occurred in the District. HMAC and GMA also conducted and continue to conduct substantial business in the District, have many dealerships in the District, and profit from their activities in the District.

## PARTIES

11. Plaintiff John Tamburo is a resident of the Northern District of Illinois.

12. Defendant HMAC is a California corporation with its principal offices at 10550 Talbert Ave., Fountain Valley, CA 92708. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

13. HMAC is engaged in the importation and distribution of Genesis, Hyundai and Kia automobiles.

14. Defendant GMA is a limited liability company organized under California law with its principal office at 10550 Talbert Avenue, Fountain Valley, CA 92708. It does business in Illinois. Its registered agent and office is Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

15. Defendant GMA is engaged in the importation and distribution of Genesis

automobiles, which are made by Hyundai.

16. The members of GMA are:

    a. HMAC;

    b. Jose Munoz, who on information and belief is a resident of California. He works at the Fountain Valley office.

    c. Claudia Marquez, who on information and belief is a resident of California. She works at the Fountain Valley office.

    d. Jason Erb, who on information and belief is a resident of California. He works at the Fountain Valley office.

    e. Young Il Ko, who on information and belief is a resident of California. He works at the Fountain Valley office.

    f. Ron S. Haughey, who on information and belief is a resident of California. He works at the Fountain Valley office.

    g. Ruth I. Eisen, who on information and belief is a resident of California. She works at the Fountain Valley office.

    h. Wilfredo Hernandez, Jr., who on information and belief is a resident of California. He works at the Fountain Valley office.

17. Jose Munoz is also the President of HMAC and Jason Erb is its Secretary.

18. Hyundai holds out Genesis as a division.

19. Genesis vehicles are sold as "Hyundai Genesis" vehicles. Exhibit B is a copy of the window sticker that Defendants placed on the vehicle he purchased when it left the factory.

20. At all relevant times, HMAC and GMA have acted in concert with respect to the provision of the BlueLink feature and "connected services".

## FACTS – GENERAL

21. Since the late 1990's, vehicle telematics had developed from a novelty to a necessary component. General Motors ("GM") first cornered the market with its 1996 OnStar telematics unit.

Over time, what had once been a novelty had "quietly become a profit margin superstar" for GM, with revenues estimated at approximately $1.5 billion annually and a profit margin of 30-35% – much higher than the profit margin on the vehicles.

22. Competitors began challenging GM's telematics leadership, pouring billions of dollars into telematics systems and wireless connectivity. Telematics systems became critical components for manufacturers attempting to distinguish their products from competitors. One 2013 study by the consulting firm Accenture found that in-vehicle technology had become the top selling point for 39% of car buyers.

23. About 2014, Hyundai and Genesis introduced the BlueLink feature and "connected services," which included the SOS emergency button and crash reporting.

24. The provision of the BlueLink feature and "connected services" is stated on the window sticker of each vehicle equipped with them (Exhibit B).

25. The instrumentation and controls of vehicles equipped with the BlueLink feature and "connected services" refer to the BlueLink feature and "connected services," as set forth in the BlueLink manual (Exhibit C). This is a representation that the BlueLink feature and "connected services" are present and will work on the vehicle.

26. The BlueLink feature and "connected services" operated using 3G networks.

27. The BlueLink feature was equipped with technology only compatible with 3G networks. The system could not be upgraded or adapted to function with later generation networks.

28. HMAC and GMA knew or should have known since the inception of the BlueLink feature that 3G would be replaced by later generation 4G and 5G networks, as a result of (1) publicly available notices and announcements by the Federal Communications Commission; (2) public announcements by telecommunications companies transitioning to 4G and later generation broadband; and (3) communications between Defendants and Verizon during the design and development of the BlueLink system.

29. As early as 2008, the FCC auctioned the 700 MHZ spectrum to buyers intending to

transition to 4G LTE. By 2009, the transition to 4G networks was already beginning.

30. Verizon continuously communicated its intent to decommission its 3G networks. As early as 2010, Verizon announced that it would transition its entire 3G network to 4G LTE. CONNECTING AM.: THE NATIONAL BROADBAND PLAN, 2010 WL 972375 at 77 (F.C.C. Mar. 16, 2010) *available at* https://transition.fcc.gov/national-broadband-plan/national-broadband-plan.pdf .

31. In 2012, Verizon formed the "4G Venture Forum for Connected Cars" to "accelerate development of the 4G LTE ecosystem across automotive OEMs, suppliers, device manufacturers, application developers and content publishers." TELECOMLEAD, *Verizon Join Hands with BMW, Honda, Hyundai, Toyota for 4G Connected Cars Forum* (Aug. 5, 2012), https://www.telecomlead.com/4g-lte/verizon-join-hands-with-bmw-honda-hyundai-and-toyota-for-4g-connected-cars-forum-9709 .

32. In 2015 Verizon launched the Verizon Hum, an aftermarket telematics system compatible with 4G networks.

33. Since 2016, Verizon has been publicly announcing its plans to decommission its 3G CDMA network. Mike Haberman, *3G CDMA Network Shut Off Date Set for December 21, 2022,* VERIZON NEWS CENTER (March 30, 2022), https://www.verizon.com/about/news/3g-cdrna-network-shut-date-set-december-31-2022

34. Despite knowing about 3G's imminent obsolescence, Defendants equipped their vehicles with a 3G-only telematics system which could not be adapted to use 4G or later networks.

35. Defendants deceived Plaintiff and class members by marketing, promoting, selling and leasing vehicles equipped with a 3G telematics system knowing that the product was going to become obsolete.

**FACTS RELATING TO PLAINTIFF**

36. On May 31, 2017 Plaintiff purchased a certified pre-owned 2015 Hyundai Genesis vehicle from D'Arcy Hyundai in Joliet, Illinois.

37. In purchasing the vehicle, Plaintiff relied on the fact the vehicle was equipped with the BlueLink feature and "connected services," which included the SOS emergency button and crash reporting.

38. HMAC and GMA failed to disclose that the BlueLink feature and "connected services" would cease functioning when the 3G network was closed.

39. In late 2022, the BlueLink feature and "connected services" ceased functioning as a result of the cessation of Verizon 3G service.

## CLASS ALLEGATIONS

40. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this action on behalf of the following classes:

    a. Nationwide class: All persons or entities in the United States who are current or former owners and/or lessees of a vehicle equipped by Defendants with the BlueLink feature and "connected services."

    b. Illinois class: All persons or entities in the State of Illinois who are current or former owners and/or lessees of a vehicle equipped by Defendants with the BlueLink feature and "connected services" or who purchased or leased such a vehicle in the State of Illinois.

41. Excluded from the proposed classes are Defendants, their employees, officers, directors, legal representatives, subsidiaries and affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons within the third degree of relationship to any such person.

42. There are more than 40 members of each class, and each class is so numerous that their individual joinder is impracticable.

43. Plaintiff is informed and believe there are hundreds of thousands of purchasers in the class.

44. Insofar as class members may be identified through business records regularly maintained by Defendants and their employees and agents, the number and identities of class members can be readily ascertained.

45. Plaintiff's claims are typical of the class members' claims. All are based on the same factual and legal theories.

46. Plaintiff will fairly and adequately represent the class members because his interests do not conflict with the interests of the class members, he has retained counsel competent and highly experienced in complex class action litigation, and intends to prosecute this action vigorously.

47. A class action is superior to all other available means of fairly and efficiently adjudicating these claims. Each individual class member suffered a relatively small injury compared to the burden and expense of individually prosecuting the complex and extensive litigation. It would be virtually impossible for class members to effectively redress the wrongs done to them on an individual basis. Furthermore, there is no reason to burden the courts with individual cases presenting the same issues.

48. Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. These include:

    a. Whether HMAC and GMA engaged in the conduct alleged herein;

    b. Whether HMAC and GMA knew or should have known that the BlueLink feature and "connected services" system would become obsolete;

    c. Whether HMAC and GMA knew or should have known that defects existed with respect to the BlueLink feature and "connected services" that would lead to permanently disabling the system;

    d. Whether HMAC and GMA caused the BlueLink feature and "connected services" system to become inoperable upon the inevitable discontinuation of the 3G broadband spectrum;

    e.    Whether HMAC and GMA intentionally, negligently or recklessly failed to disclose and/or concealed the imminent obsolescence of the BlueLink feature and "connected services";

    f.    Whether HMAC and GMA owed a duty to Plaintiff and Class Members to disclose the imminent obsolescence and inoperability of the BlueLink feature and "connected services" system;

    g.    Whether HMAC and GMA's failure to disclose information about the BlueLink feature and "connected services" system was material;

    h.    Whether HMAC and GMA made representations concerning the existence of the BlueLink feature and "connected services" by including controls on vehicles, listing them on window stickers, and including them on written materials;

    i.    Whether HMAC and GMA's unlawful, unfair, and/or deceptive practices harmed Plaintiff and the class members;

    j.    The appropriate relief.

## TOLLING AND STATUTES OF LIMITATIONS

49. HMAC and GMA's knowing and active concealment and denial of the facts alleged herein toll any applicable statute(s) of limitations. Plaintiff and class members could not reasonably have discovered the true, latent nature of the defect complained of until shortly before commencing this class action litigation.

50. Plaintiff and class members had no reasonable ability to discover the presence of the problem complained of within the applicable statute of limitations through the exercise of reasonable diligence.

51. Any statutes of limitation otherwise applicable to any claims asserted herein thus have been tolled by the discovery rule.

52. All applicable statutes of limitations have also been tolled by HMAC and GMA's

knowing, active and ongoing fraudulent concealment of material facts alleged herein.

53. HMAC and GMA had a duty to disclose, among other things, the 3G-only capabilities and imminent obsolescence of the BlueLink feature and "connected services" system.

54. Despite their knowledge, HMAC and GMA actively concealed these material facts from Plaintiff and class members while continuing to profit from the sale and lease of vehicles equipped with technology HMAC and GMA knew would become obsolete, as well as from the sale of "connected services."

55. As a result of HMAC and GMA's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## COUNT I – FRAUD BY MISREPRESENTATION

56. Plaintiff incorporates paragraphs 1-55.

57. Plaintiff brings this claim on behalf of himself and members of the national class.

58. HMAC and GMA misrepresented that vehicles had functioning BlueLink and "connected services":

    a. By providing controls for such feature and services on the vehicles equipped with them, as set forth in Exhibit B.

    b. By representing in written materials provided or made available to all owners of Defendant's vehicles, such as Exhibits A-C, that they had such feature and services.

59. HMAC and GMA failed to disclose that the feature and services would cease functioning when the 3G network was closed.

60. The facts HMAC and GMA misrepresented and concealed are material because they directly impact the safety of their vehicles. A reasonable consumer would have considered them to be important when deciding whether to purchase the vehicles or pay a lesser price.

61. HMAC and GMA acted with the intent to induce Plaintiff and the class members to purchase vehicles at a higher price than they otherwise would have paid.

62. Plaintiff and the class members justifiably relied on the representations. HMAC and GMA were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, and/or members of the class.

63. As a direct and proximate result of HMAC and GMA's misrepresentation of material facts, Plaintiff and class members sustained damage as set forth herein and are entitled to actual, compensatory and punitive damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

64. HMAC and GMA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the class members. Its conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the members of the national class and against HMAC and GMA for:

    a. Compensatory damages;

    b. Punitive damages;

    c. Costs of suit;

    d. Such other or further relief as is appropriate

## COUNT II – UNJUST ENRICHMENT

65. Plaintiff incorporates paragraphs 1-55.

66. Plaintiff brings this claim on behalf of himself and members of the national class.

67. HMAC and GMA engaged in inequitable conduct which resulted in their obtaining money from Plaintiff and the class members.

68. HMAC and GMA misrepresented that vehicles had functioning BlueLink and "connected services":

    a. By providing controls for such feature and services on the vehicles equipped with them, as set forth in Exhibit B.

    b.  By representing in written materials provided or made available to all owners of Defendant's vehicles, such as Exhibits A-C, that they had such feature and services.

69. HMAC and GMA failed to disclose that the feature and services would cease functioning when the 3G network was closed.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the members of the national class and against HMAC and GMA for:

    a.  Appropriate damages;

    b.  Costs of suit;

    c.  Such other or further relief as is appropriate

## COUNT III – DECEPTIVE ACTS AND PRACTICES

70. Plaintiff incorporates paragraphs 1-55.

71. Plaintiff brings this claim on behalf of himself and members of the Illinois class.

72. The Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA") prohibits unfair or deceptive business practices including, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omissions of such material fact . . . ."

73. Plaintiff and the Illinois class members are "persons" as defined by 815 ILCS 505/1.

74. HMAC and GMA are "persons" as defined by 815 ILCS 505/1.

75. HMAC and GMA are and have at all relevant times, engaged in "trade" and commerce" as defined by 815 ILCS 505/1(f).

76. HMAC and GMA engaged in unfair and deceptive practices by concealing, misrepresenting, suppressing, and/or omitting material facts from Plaintiff and the Illinois class members concerning the BlueLink feature and "connected services" and their imminent obsolescence.

77. The facts misrepresented, concealed, and/or omitted by HMAC and GMA are material because they directly concern the safety of their vehicles. A reasonable consumer would have considered them to be important in deciding whether to purchase the vehicles or pay a lesser price. Had Plaintiff and the Illinois class members known the true facts, they would not have purchased the vehicles or would have paid less for them.

78. HMAC and GMA intended that Plaintiff and the Illinois class members would rely on the concealment, misrepresentation, and omission of these material facts and purchase vehicles at a cost including a non-defective BlueLink feature and "connected services" system.

79. As a direct and proximate result of HMAC and GMA's violation of the ICFA, Plaintiff and Illinois class members sustained damages and are entitled to actual and consequential damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

80. Plaintiff alleges that HMAC and GMA intentionally and/or knowingly violated the ICFA and seeks punitive damages under 815 ILCS 505/10a(a).

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the Illinois class members and against HMAC and GMA for:

    a. Compensatory damages;

    b. Punitive damages;

    c. Attorney's fees, litigation expenses and costs of suit;

    d. Such other or further relief as is appropriate.

## COUNT IV – FRAUD BY CONCEALMENT

81. Plaintiff incorporates paragraphs 1-55.

82. Plaintiff brings this claim on behalf of himself and members of the Illinois class.

83. HMAC and GMA had a duty to disclose the issues with respect to BlueLink and "connected services" because they consistently marketed their vehicles as safe and proclaimed safety as one of HMAC and GMA's highest corporate priorities.

84. In addition, HMAC and GMA had a duty to disclose these omitted material facts

because they were known and/or accessible only to HMAC and GMA who has superior knowledge and access to the facts, and HMAC and GMA knew they were not known to or reasonably discoverable by Plaintiff and the Illinois class members.

85. The facts HMAC and GMA concealed are material because they directly impact the safety of the vehicles sold. A reasonable consumer would have considered them to be important when deciding whether to purchase the vehicles or pay a lesser price.

86. HMAC and GMA actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Illinois class members to purchase the vehicles at a higher price than they otherwise would have paid.

87. Plaintiff and the Illinois class members were unaware of these omitted material facts and would not have acted as they did had they known of the concealed and/or suppressed facts. The actions of Plaintiff and the Illinois class members were justified. HMAC and GMA were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, and/or members of the Illinois class.

88. As a direct and proximate result of HMAC and GMA's fraudulent concealment of material facts, Plaintiff and Illinois class members sustained damage as set forth herein and are entitled to actual, compensatory and punitive damages and other relief in an amount to be proved at trial.

89. HMAC and GMA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the class members. Their conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the Illinois class members and against HMAC and GMA for:

      a.    Compensatory damages;

      b.    Punitive damages;

      c.    Attorney's fees, litigation expenses and costs of suit;

      d.    Such other or further relief as is appropriate

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62970473)
Carly M. Roman (ARDC 6334371)
**EDELMAN, COMBS, LATTURNER**
    **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

T:\39306\Complaint Revised 1.17.23_.wpd

-14-

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

>   */s/ Daniel A. Edelman*
>   Daniel A. Edelman